UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.

SEAN COCHRANE,

       Plaintiff,

v.

GREENER ENERGY, LLC,
UFG GROUP, INC. and
RAYMOND TITUS,

       Defendants.             /

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SEAN COCHRANE ("Cochrane"), by and through undersigned counsel, and in accordance with the applicable Federal Rules of Civil Procedure and Local Rules for the Southern District of Florida, hereby files this Complaint and Demand for Jury Trial against Defendants, GREENER ENERGY, LLC, UFG GROUP, INC., and RAYMOND TITUS (collectively "Defendants"), and alleges:

## INTRODUCTION

1.     This is a breach of contract matter arising out of Defendants failure to uphold their payment obligations to Cochrane as set forth in a series of related sale and consulting agreements.

## PARTIES

2.     Plaintiff Sean Cochrane is *sui juris* and is a resident of Australia.

3.     Defendant Greener Energy, LLC ("Greener Energy") is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at

1

2121 Vista Parkway, West Palm Beach, Florida, 33411. Its members are (1) Raymond Titus, a citizen and resident of the State of Florida; and, (2) UFG Group, Inc. ("UFG") a Florida company organized and existing under the laws of the State of Florida with its principal place of business at 2121 Vista Parkway, West Palm Beach, Florida, 33411. Therefore, Greener Energy, via its members, is a citizen of Florida as defined by 28 U.S.C. §1332.

4.      Defendant UFG Group, Inc. ("UFG") is a Florida company organized and existing under the laws of the State of Florida with its principal place of business at 2121 Vista Parkway, West Palm Beach, Florida, 33411, and is therefore a citizen of Florida as defined by 28 U.S.C. §1332.

5.      Defendant Raymond Titus ("Titus") is *sui juris* and is a citizen and resident of the State of Florida.

## JURISDICTION AND VENUE ALLEGATIONS

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000, exclusive of interest, attorney's fees, and costs as set forth below.

7.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) and (2), because the Defendants reside within this judicial district and the contracts that are the subject of this action were entered into and likewise breached within this judicial district.

## GENERAL ALLEGATIONS

8.      Sean Cochrane is an energy efficiency and sustainable products expert with a wide range of experience and knowledge in the industry. He is a Certified Green Partner (CGP), a LEED certified Associate, and is an advisor to the Developers and Builders Alliance.

9.      In 1998, Sean Cochrane first used his expertise to launch a sustainable energy retail operation in Australia, Allsafe Energy Efficient Products, which continues to operate successfully to date under the name SuperGreen Solutions.

10.     Titus is UFG's Chief Executive Officer. UFG is a franchising giant with 1,600 franchise locations in 80 countries around the world. The company includes franchise industry leaders Signarama, the world's largest sign franchise; Fully Promoted, the world's largest embroidery franchise; Experimax, an incredibly successful retail computer electronics sales and service center; Transworld Business Advisors, the business brokerage franchise; Venture X, a retail shared office franchise, and most recently UFG has expanded into restaurants – Jon Smith Subs, an established sandwich and sub shop; and The Great Greek Grill, a newly established Greek food restaurant; and is now offering a business networking franchise called Network Lead Exchange.

11.     In 2010, Sean Cochrane met Tony Foley, the International Franchise President for UFG. Thereafter, Foley, Titus, and UFG courted Cochrane in an attempt to establish a partnership to grow Cochrane's energy efficient products brand in the United States.

12.     Thereafter, Cochrane, via Cochrane Enterprises LLC, opened his first energy efficient product store in the United States in Palm Beach, Florida. Cochrane operated it successfully for approximately one year in order to prove concept and profitability to UFG.

13.     Cochrane Enterprises LLC then sold the store to Greener Energy. At its inception, Cochrane owned a 50% interest in Greener Energy, which did business in Florida as SuperGreen Solutions ("SGS"). The other ownership interests in Greener Energy were held by Titus and UFG.

14.     On June 1, 2014, Greener Energy entered into an Agreement with Cochrane to repurchase Cochrane's membership interest. *See* Sale Agreement, attached hereto as **Exhibit "A."**

15.     Among other terms of the Sale Agreement, Greener Energy agreed to:

a.     Purchase Sean Cochrane's interest for $260,000.00 USD to be paid via a lump sum payment of $170,000.00 USD upon execution; and, three (3) monthly installment payments of $30,000.00 USD to occur on February 5, 2015, March 5, 2015, and April 5, 2015;

b.     Pay Clare Cochrane an additional $100,000.00 USD for her interest in the SGS store located in North Palm Beach, Florida to be paid in six (6) equal monthly installments of $16,666.00 USD commencing July 15, 2014, and continuing on the 15th day of each following month until paid in full. *See* Sale Agreement, **Ex. "A."**

16.     Also, as part of the Sale Agreement, Cochrane remained the sole owner of the right to develop the SuperGreen Solutions concept in Australia and retained that right following execution of the Sale Agreement. *See* Sale Agreement, **Ex. "A."**

17.      Cochrane was induced to sell his membership interest in Greener Energy to Titus and UFG at a steep discount based on the representations and promises of Titus and UFG that (a) the sale should not place excessive financial pressure on the company so that it could continue to grow; (b) franchising giant UFG would make sure Cochrane was eventually fully compensated; and (c) the difference would be made up to Cochrane over time in conjunction with a proposed second agreement for consulting services. Reluctantly, and based upon the representations, promises, and assurances of Titus and UFG, including one exchange

when Titus personally shook Cochrane's hand and guaranteed that Cochrane would be fully compensated by franchising giant UFG, Cochrane agreed to sell his membership interest at a steep discount.

18.     The Parties entered into the subject Consulting Agreement dated February 16, 2015, attached hereto as **Exhibit "B."**

19.     As part of the Consulting Agreement, and in exchange for Cochrane's expertise as a consultant and technical advisor, Greener Energy agreed to:

>    a.     Pay Cochrane $14,000.00 USD on the first day of each month commencing on May 1, 2015, and continuing on the first day of each following month during the term of the Agreement, which expires on October 31, 2021;
>
>    b.     Pay Cochrane ten percent (10%) of the development fee which any new international master franchisee has paid or pays the company during the period of January 1, 2015, through the end of the term of the Agreement. *See* Consulting Agreement, **Ex. "B."**

20.     At all times material, Cochrane continued to provide consulting and technical advising services to UFG, Greener Energy, and its franchisees per the terms of the Consulting Agreement, including assistance with growing the brand through new international master franchisees.

21.     Certain payments to Cochrane under the Consulting Agreement were often times paid by various UFG affiliated companies other than Greener Energy, including Sign A Rama, Inc.

22.     Greener Energy upheld its contractual obligations to Cochrane until August 2016, when the company encountered cash flow problems.

23.     During this time, UFG, through its Chief Financial Officer, Todd Newton, proposed a reduction in the monthly payments due to Cochrane in exchange for an extension of the term of the Consulting Agreement. *See* e-mail correspondence dated August 27, 2016, attached hereto as **Composite Exhibit "C."**

24.     In a further display of flexibility and good faith, Cochrane entertained the requested reduction and made an offer to UFG reducing the monthly payments due under the Consulting Agreement by 10%, from $14,000.00 USD down to $12,600.00 USD, in exchange for an increase or extension of the term of the agreement also by 10%. *See* e-mail correspondence dated August 28, 2016, attached hereto as **Composite Exhibit "C."**

25.     UFG accepted Cochrane's offer stating "Thanks Sean for the flexibility. We will start the 10% reduction with the next payment. Cheryl Fader is issuing the $10,000 accelerator payment today. I will get back to you on a lump sum offer. Todd" *See* e-mail correspondence dated August 30, 2016, attached hereto as **Composite Exhibit "C."**

26.     UFG and/or Greener Energy, via Sign A Rama, Inc., began making partial monthly payments to Cochrane in the amount of $12,600.00 USD per the August 30, 2016, e-mail exchange.

27.     Thereafter, UFG again requested that Cochrane accept payments reduced by 50% for three months in July 2018, August 2018, and September 2018 given ongoing cash flow issues. Again, in a further display of flexibility and good faith, Cochrane agreed to payments of $6,300.00 USD for said months with the understanding that the shortfall would be made up before expiration of the term. *See* e-mail correspondence dated July 18, 2018, attached hereto as **Exhibit "D."**

28.     Thereafter, payments of $12,600.00 USD were made to Cochrane until March 2020, when all payments ceased in their entirety.

29.     Notwithstanding both Greener Energy and UFG's failure to uphold their obligations to Cochrane, Cochrane continued to provide said consulting services to Greener Energy's franchisees at Greener Energy and/or UFG's request in order to grow the brand internationally. This has occurred most recently in March 2020 wherein Cochrane provided counsel and advice for growing the brand in Saudi Arabia.

30.     As of the date of this filing, Cochrane is owed a total of $202,275.05 USD in past due payments.

31.     The Consulting Agreement also contains an acceleration clause, which states:

> In the event that the Company defaults in the payment of any monthly payment due under Section 2(a) of this Agreement and fails to cure such default within thirty (30) days of receipt by it of a written notice of default from Consultant, **Consultant, at his option, may declare all future monthly payments due under Section 2(a) immediately due and payable.** Additionally, in the event of any such default by the Company that is not cured within the thirty (30) [day] cure period, the restrictions on Consultant's competitive activities set forth in Section 5 of the Agreement dated June 1, 2014 between Company and Consultants shall be terminated.

*See* Consulting Agreement, **Ex. "B."** (emphasis added).

32.     By hereby invoking the acceleration clause of the Consulting Agreement, and because Defendant is in default, has been sufficiently placed on notice, and has not cured, Cochrane is now currently due an additional $154,000.00 USD as the amount which remains due and owing on the remainder of the contract term.

33.     In total, Cochrane is owed $356,275.05 as a result of Defendant's breach of the aforementioned contracts.

34.     All conditions precedent to the commencement of this action have occurred, or have been performed, excused, satisfied or waived. Specifically, Plaintiffs have provided written notice of default to Greener Energy in accordance with paragraphs 2(b) and 5(e) of the Consulting Agreement. *See* **Exhibit "B."**

35.     Plaintiffs have retained the law firm of Chartwell Law to pursue this action and are obligated to pay costs and fees incurred in that effort.

<u>**Count I –Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing (Consulting Agreement) - Greener Energy**</u>

36.     Cochrane re-alleges and re-incorporates the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37.     On February 16, 2015, Cochrane and Greener Energy entered into the subject Consulting Agreement wherein Greener Energy agreed to make certain payments to Cochrane in exchange for consulting services. *See* **Exhibit "B."**

38.     The Consulting Agreement required Greener Energy pay Cochrane $14,000.00 USD on the first day of each month commencing on May 1, 2015, and continuing on the first day of each following month during the term of the Agreement, which expires on October 31, 2021. *Id.*

39.     Cochrane performed its contractual obligations by providing said consulting services.

40.     Greener Energy breached the Consulting Agreement by:

a.     failing to pay Cochrane the full amount of $14,000.00 USD per month when it or its agents and/or representatives reduced the monthly payment to $12,600.00 USD in September 2016;

b.   failing to pay Cochrane the full amount of $14,000.00 USD per month when it reduced its payment to $6,300.00 USD in July 2018, August 2018, and September 2018;

c.   failing to pay Cochrane the reduced amount of $12,600.00 USD per month when it reduced its payment to $6,300.00 USD in July 2018, August 2018, and September 2018;

d.   failing to pay Cochrane any monies due and owning whatsoever from March 2020 through the present date;

e.   failing to pay the remainder of all payments due pursuant to the acceleration clause of the Consulting Agreement after failing to cure its default within 30 days.

41.    Additionally, under Florida law, a covenant of good faith and fair dealing is implied in every contract. The covenant is designed to protect the parties' reasonable expectations of a contract.

42.    Here, Greener Energy has breached the covenant of good faith and fair dealing as it continuously attempted to reduce its payment obligations to Cochrane time and time again, ultimately resulting in a failure to pay altogether.

43.    Instead of paying full value for Cochrane's interest in Greener Energy, it contracted for a discounted price in the Sale Contract and essentially requested a longer pay-out via the Consulting Agreement. Instead of paying its obligations under the Consulting Agreement, it requested a reduction in monthly payments for again a longer term in the

August 30, 2016 E-mail contract. For three months, Greener Energy only paid Cochrane 50% of this reduced amount as well.

44.     At bottom, Greener Energy's intentional and tactical delay by repeatedly seeking a reduction in payments over a longer period of time, which ultimately culminated in stopping payment altogether have frustrated Cochrane's reasonable contract expectations and demonstrate Greener Energy's capricious, opportunistic, and bad faith behavior to avoid paying Cochrane his due.

45.     Cochrane has been damaged by Greener Energy's breach of contract and breach of the covenant of good faith and fair dealing by refusing to pay amounts due and owing, which currently total $356,275.05.

WHEREFORE, Cochrane demands that the Court enter judgment against Defendant Greener Energy for breach of the Consulting Agreement and breach of the covenant of good faith and fair dealing, award Cochrane compensatory damages plus interest and costs, award Cochrane attorney's fees and costs as provided for by contract and/or statute, and grant such further relief as this Court deems just and proper under the circumstances.

### Count II – Breach of Oral or Written Contract and Breach of Covenant of Good Faith and Fair Dealing (E-mail Contract) – Greener Energy

46.     Cochrane re-alleges and re-incorporates the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

47.     This Breach of Oral or Written Contract claim is brought in the alternative if it is determined that the August 30, 2016 E-mail exchange did not constitute a valid modification of the Consulting Agreement. If not, it constitutes an independent contract and independent breach.

48.     On August 30, 2016, Cochrane and UFG on behalf of Greener Energy entered into a separate E-mail Contract wherein a reduction of the monthly payments to Cochrane was agreed in the amount of $12,600.00 USD in exchange for Cochrane's consulting services to continue over a longer term. *See* **Composite Exhibit "C."**

49.     Greener Energy initially performed its obligations under the E-mail contract by paying Cochrane the amounts due and owing, with some exceptions, until all payments ceased in March 2020.

50.     Cochrane performed its contractual obligations by providing said consulting services.

51.     Greener Energy breached the E-mail contract by:

    a.   failing to pay Cochrane the full amount of $12,600.00 USD per month when it reduced its payment to $6,300.00 USD in July 2018, August 2018, and September 2018;

    b.   failing to pay Cochrane any monies due and owing whatsoever from March 2020 through the present date;

52.     Additionally, under Florida law, a covenant of good faith and fair dealing is implied in every contract. The covenant is designed to protect the parties' reasonable expectations and often times serves as a gap-filling default rule when a question is not resolved by the terms of the contract.

53.     Here, Greener Energy has breached the covenant of good faith and fair dealing as it continuously attempted to reduce its payment obligations to Cochrane time and time again, ultimately resulting in a failure to pay altogether.

54.     Instead of paying full value for Cochrane's interest in Greener Energy, it contracted for a discounted price in the Sale Contract and essentially requested a longer pay-out via the Consulting Agreement. Instead of paying its obligations under the Consulting Agreement, it requested a reduction in monthly payments for again a longer term in the August 30, 2016 E-mail contract. For three months, Greener Energy only paid Cochrane 50% of this reduced amount as well.

55.     At bottom, Greener Energy's intentional and tactical delay by repeatedly seeking a reduction in payments over a longer period of time, which ultimately culminated in stopping payment altogether have frustrated Cochrane's reasonable contract expectations and demonstrate Greener Energy's capricious, opportunistic, and bad faith behavior to avoid paying Cochrane his due.

56.     Cochrane has been damaged by Greener Energy's breach of contract and breach of the covenant of good faith and fair dealing by refusing to pay amounts due and owing, which currently total $202,275.05 USD.

WHEREFORE, Cochrane demands that the Court enter judgment against Defendant Greener Energy for breach of the August 26, 2016 E-mail Contract and breach of the covenant of good faith and fair dealing, award Cochrane compensatory damages plus interest and costs, award Cochrane attorney's fees and costs as provided for by contract and/or statute, and grant such further relief as this Court deems just and proper under the circumstances.

### Count III – Breach of Oral or Written Contract and Breach of Covenant of Good Faith and Fair Dealing (E-mail Contract) – UFG

57.     Cochrane re-alleges and re-incorporates the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

58.     This Breach of Oral or Written Contract claim is brought in the alternative if it is determined that the August 30, 2016 E-mail exchange did not constitute a valid modification of the Consulting Agreement. If not, it constitutes an independent contract and independent breach.

59.     On August 30, 2016, Cochrane and UFG entered into a separate E-mail Contract wherein a reduction of the monthly payments to Cochrane was agreed in the amount of $12,600.00 USD in exchange for Cochrane's consulting services to continue over a longer term. *See* **Composite Exhibit "C."**

60.     UFG initially performed its obligations under the E-mail contract by paying Cochrane the amounts due and owing, with some exceptions, until all payments ceased in March 2020.

61.     Cochrane performed its contractual obligations by providing said consulting services.

62.     UFG breached the E-mail contract by:

a.  failing to pay Cochrane the full amount of $12,600.00 USD per month when it reduced its payment to $6,300.00 USD in July 2018, August 2018, and September 2018;

b.  failing to pay Cochrane any monies due and owing whatsoever from March 2020 through the present date;

63.     Additionally, under Florida law, a covenant of good faith and fair dealing is implied in every contract. The covenant is designed to protect the parties' reasonable

expectations and often times serves as a gap-filling default rule when a question is not resolved by the terms of the contract.

64.     Here, UFG has breached the covenant of good faith and fair dealing as it continuously attempted to reduce its payment obligations to Cochrane time and time again, ultimately resulting in a failure to pay altogether.

65.     Instead of paying full value for Cochrane's interest in Greener Energy, UFG contracted for a discounted price in the Sale Contract and essentially requested a longer pay-out via the Consulting Agreement. Instead of paying its obligations under the Consulting Agreement, UFG requested a reduction in monthly payments for again a longer term in the August 30, 2016 E-mail contract. For three months, UFG only paid Cochrane 50% of this reduced amount as well.

66.     At bottom, UFG's intentional and tactical delay by repeatedly seeking a reduction in payments over a longer period of time, which ultimately culminated in stopping payment altogether have frustrated Cochrane's reasonable contract expectations and demonstrate UFG's capricious, opportunistic, and bad faith behavior to avoid paying Cochrane his due.

67.     Cochrane has been damaged by UFG's breach of contract and breach of the covenant of good faith and fair dealing by refusing to pay amounts due and owing, which currently total $202,275.05 USD.

WHEREFORE, Cochrane demands that the Court enter judgment against Defendant UFG for breach of the August 26, 2016 E-mail Contract and breach of the covenant of good faith and fair dealing, award Cochrane compensatory damages plus interest and costs, award Cochrane attorney's fees and costs as provided for by contract and/or statute, and grant such

further relief as this Court deems just and proper under the circumstances.

### Count IV –Promissory Estoppel – UFG

68.     Cochrane re-alleges and re-incorporates the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

69.     This is a cause of action for promissory estoppel being pled in the alternative if it is determined that the August 30, 2016 E-mail exchange did not constitute a valid modification of the Consulting Agreement and it is also determined that the August 30, 2016 E-mail exchange does not constitute a valid and enforceable contract between Cochrane and UFG.

70.     As a result of Greener Energy's purported and represented cash flow problems, UFG made a clear and unambiguous promise to make monthly payments to Cochrane in the amount of $12,600.00 USD over a longer term in exchange for Cochrane's consulting services. *See* **Composite Exhibit "C."**

71.     Cochrane acted in reliance on UFG's promise to pay by refraining from holding Greener Energy and/or UFG in default of the Consulting Agreement and otherwise abstaining from court action.

72.     Cochrane's reliance on UFG's promise was both reasonable and foreseeable. Indeed, Cochrane appreciated that if Greener Energy was experiencing cash flow problems, UFG, a much larger and purportedly stable company, would step in, do the right thing, and assure the payments due to Cochrane were made, albeit for less than originally bargained for and over a longer period of time.

73.     Cochrane has been damaged due to its reliance on UFG's promise and UFG's subsequent failure to comply with that promise.  Indeed, not only has Cochrane been paid

$1,400.00 USD less per month than what he was contractually due since September 2016, Cochrane is now faced with the possibility of never recovering this monthly shortfall due to UFG's false promise to re-pay Cochrane over the extended term.

74.     As a result, Cochrane is entitled to recover from UFG all damages, including compensatory damages and/or other damages, resulting from UFG's failure to comply with its promise.

WHEREFORE, Cochrane demands that the Court enter judgment against Defendant UFG on the claim of Promissory Estoppel, award Cochrane compensatory damages plus interest and costs, award Cochrane attorney's fees and costs as provided for by contract and/or statute, and grant such further relief as this Court deems just and proper under the circumstances.

## Count V – Unjust Enrichment – UFG

75.     Cochrane re-alleges and re-incorporates the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

76.     This is a cause of action for unjust enrichment being pled in the alternative if it is determined that the August 30, 2016 E-mail exchange did not constitute a valid modification of the Consulting Agreement and it is also determined that the August 30, 2016 E-mail exchange does not constitute a valid and enforceable contract between Cochrane and UFG.

77.     Cochrane conferred a direct benefit upon UFG. Specifically, Cochrane provided UFG and its related companies, for which UFG holds an ownership interest, various consulting and technical services, provided guidance to new franchisees, developed

multiple leads for international growth, and brought efficient energy credibility to the brand through their affiliation.

78.     UFG appreciated this benefit as its SuperGreen Solutions brand continued to grow internationally.

79.     UFG retained such a benefit at Cochrane's ongoing expense. However, UFG failed to fully compensate Cochrane the full value of such benefit and, as a result, Cochrane has been damaged.

80.     Equity and good conscience require that Cochrane be compensated for such benefit conferred upon UFG. This injustice can only be avoided by enforcement of UFG's promise to Cochrane.

81.     As a result, Cochrane is entitled to recover from UFG all damages, including compensatory damages and/or other damages, resulting from UFG's failure to fully compensate Cochrane for the benefit that Cochrane conferred upon UFG.

WHEREFORE, Cochrane demands that the Court enter judgment against Defendant UFG on the claim of Unjust Enrichment, award Cochrane compensatory damages plus interest and costs, award Cochrane attorney's fees and costs as provided for by contract and/or statute, and grant such further relief as this Court deems just and proper under the circumstances.

**Count VI – Fraudulent Transfer under Fla. Stat. §§ 726.105(1)(a) and 726.108 – UFG**

82.     Cochrane re-alleges and re-incorporates the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

83.     The Florida Uniform Fraudulent Transfer Act ("FUFTA") was promulgated to prevent an insolvent debtor, like Greener Energy, from transferring assets out of the reach

of its creditors, like Cochrane, when the debtor's intent is to hinder, delay, or defraud its creditors.

84.    Here, Cochrane is a creditor of Greener Energy as defined by FUFTA.

85.    As represented by Greener Energy and UFG, Greener Energy cannot meet its obligations to Cochrane under the Consulting Agreement, and Greener Energy is unable to meet its debt obligations and is insolvent.

86.    Greener Energy made certain transfers of assets to UFG with the intent of defrauding and avoiding creditors such as Cochrane. Specifically, Greener Energy transferred certain assets to UFG:

a.    With the actual intent to hinder, delay and defraud creditors such as Cochrane;

b.    Greener Energy did not receive reasonable equivalent value and/or received insufficient or no consideration for these transferred assets;

c.    Greener Energy's transfers were to insiders as defined by FUFTA, including UFG as the managing member of Greener Energy, LLC, and there was collusion among the Defendants;

d.    Given the insider relationship, and relationship between Greener Energy, UFG as management member, and Titus as the only other member, Greener Energy retained access to or control over the fraudulently transferred funds or assets;

e.    The transfers to UFG constituted a substantial portion of Greener Energy's assets;

f.    Greener Energy and UFG knew that Greener Energy would not be able to pay its debts in light of the transfers; and,

g.    Greener Energy became insolvent shortly after or as a result of the transfers made to UFG and/or other insiders.

87.    Greener Energy's fraudulent transfers to UFG ultimately rendered Greener Energy insolvent and/or unable to meet its debt obligations, including on the subject Consulting Agreement.

88.    If Greener Energy had not made such fraudulent transfers to UFG, Greener Energy would have been able to satisfy its debts to Cochrane.

89.    As a result of these fraudulent transfers, Cochrane has suffered significant damages.

WHEREFORE, Cochrane demands judgment against UFG in the total amount of (1) the damages suffered by Cochrane under Count I *or* the amount of the transfers, whichever is less, together with (2) pre-and post-judgment interest thereon; (3) all the relief set forth in Florida Statute § 726.108 and any other applicable law; and, (4) grant such further relief as this Court deems just and proper under the circumstances.

**Count VII – Fraudulent Transfer under Fla. Stat. §§ 726.105(1)(a) and 726.108 – Titus**

90.    Cochrane re-alleges and re-incorporates the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

91.    The Florida Uniform Fraudulent Transfer Act ("FUFTA") was promulgated to prevent an insolvent debtor, like Greener Energy, from transferring assets out of the reach of its creditors, like Cochrane, when the debtor's intent is to hinder, delay, or defraud its creditors.

92.     Here, Cochrane is a creditor of Greener Energy as defined by FUFTA.

93.     As represented by Greener Energy and UFG, Greener Energy cannot meet its obligations to Cochrane under the Consulting Agreement, and Greener Energy is unable to meet its debt obligations and is insolvent.

94.     Greener Energy made certain transfers of assets to Titus with the intent of defrauding and avoiding creditors such as Cochrane. Specifically, Greener Energy transferred certain assets to Titus:

      a.     With the actual intent to hinder, delay and defraud creditors such as Cochrane;

      b.     Greener Energy did not receive reasonable equivalent value and/or received insufficient or no consideration for these transferred assets;

      c.     Greener Energy's transfers were to insiders as defined by FUFTA, including Titus as a member of Greener Energy, LLC, and there was collusion among the Defendants;

      d.     Given the insider relationship, and relationship between Greener Energy, UFG as management member, and Titus as the only other member, Greener Energy retained access to or control over the fraudulently transferred funds or assets;

      e.     The transfers to Titus constituted a substantial portion of Greener Energy's assets;

      f.     Greener Energy and Titus knew that Greener Energy would not be able to pay its debts in light of the transfers; and,

g.      Greener Energy became insolvent shortly after or as a result of the transfers made to Titus and/or other insiders.

95.      Greener Energy's fraudulent transfers to Titus ultimately rendered Greener Energy insolvent and/or unable to meet its debt obligations, including on the subject Consulting Agreement.

96.      If Greener Energy had not made such fraudulent transfers to Titus, Greener Energy would have been able to satisfy its debts to Cochrane.

97.      As a result of these fraudulent transfers, Cochrane has suffered significant damages.

WHEREFORE, Cochrane demands judgment against Raymond Titus in the total amount of (1) the damages suffered by Cochrane under Count I *or* the amount of the transfers, whichever is less, together with (2) pre-and post-judgment interest thereon; (3) all the relief set forth in Florida Statute § 726.108 and any other applicable law; and, (4) grant such further relief as this Court deems just and proper under the circumstances.

## Jury Demand

98.      Plaintiff requests that this civil action be tried before a jury.

## Prayer for Relief

WHEREFORE, based on the foregoing, Plaintiff Sean Cochrane respectfully requests judgment against Defendants Greener Energy, UFG, and Raymond Titus as follows:

A.   For breach of the Consulting Agreement and breach of the covenant of good faith and fair dealing;

B.   For breach of all modifications to the Consulting Agreement and breach of the covenant of good faith and fair dealing;

C.   For breach of all oral or written contracts by and between Cochrane and Greener Energy and/or UFG;

D.   All damages including the amounts due and owing to Cochrane in the amount of $356,275.05;

E.   All the relief set forth in Florida Statute § 726.108 against UFG and Titus;

F.   All other damages, including actual, compensatory, and statutory damages to the extent permissible by law;

G.   Pre-judgment and post-judgment interest on the foregoing sums;

H.   Reasonable attorneys' fees, costs and expenses incurred by Cochrane as provided for by contract and/or statute;

I.   Such other and further relief as this Court deems just and proper under the circumstances.

Dated this  23rd  day of  November , 2020.

       Respectfully submitted,


       */s/ Marcus G. Mahfood*
       Marcus G. Mahfood [FBN:  41495]
       mmahfood@chartwelllaw.com
       CHARTWELL LAW
       100 SE 2nd Street
       Suite 2150
       Miami, FL 33131
       Phone:   (305) 372-9044
       Facsimile:   (305) 372-5044
       ***Attorneys for Plaintiff***